UNITED STATES DISTRICT COURT
FOR THE EASTERN DIVISION OF MICHIGAN

Grace Ellis Adams,
    Plaintiff

CASE NO. 2:07-cv-15494
JUDGE: SEAN F. COX

v.

JURY TRIAL DEMANDED

WILMINGTON FINANCE/AIG
U.S. BANK,
AMERIMORTGAGE,
    Defendants

_____/

## AMENDED PREDATORY LENDING COMPLAINT

1. This is a predatory lending complaint to the Court of mortgage Fraud and lending Deception by the Defendants. In **McZeal d/b/a International Walkie Talkie v. Sprint Nextel Corp** the court held that this complaint included sufficient detail to allow the defendants to answer, and thus met the notice pleading required to survive a Rule 12(b)(6) motion. The Federal Circuit noted that this was a question of fact and was inappropriately decided by the district court. While reversing the district court's ruling, the Federal Circuit noted that McZeal's complaint, while meeting the low bar for pro se litigants to avoid dismissal, contained insufficient facts to grant the injunctions sought, but the district court should not have dismissed McZeal's entire complaint.

A plaintiff in a patent and service mark infringement lawsuit met the low bar for notice pleading, offering sufficient notice to the defendant of the charges against it, the U.S. Court of Appeals for the Federal Circuit ruled Sept. 14 (*McZeal d/b/a International Walkie Talkie v. Sprint Nextel Corp.*, Fed. Cir., No. 2006-1548, 9/14/07).

Vacating the dismissal of the plaintiff's complaint, the court criticized the plaintiff's 95-page-long complaint, which included several "frivolous" complaints, but noted that with regard to the patent infringement claim, there was enough information there for the court and the defendant to understand the claim at issue.

Further, in Bell Atlantic Corp. v Twombly, the Supreme Court has explained what is necessary for a claimant to state in a claim:

Federal Rule of Civil Procedure 8 (a) (2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." **Bell Atlantic Corp. v Twombly, 127 S. Ct. 1955, 1965 (2007)**

2. The Defendants Amerimortgage (broker) and Wilmington Finance/AIG (lender) represented to Plaintiff that the mortgage she was receiving on her home was an ARM with a low margin and low index and Plaintiff relied on this material information to close a mortgage on her home. Before the mortgage closed, Defendants changed the terms of Plaintiff's loan from an ARM to a HIGH INTEREST FIXED LOAN and failed to disclose these changes in material information and form to Plaintiff before or at the closing on her loan, February 9, 2006. Plaintiff did not find out that the terms had been changed until months later after the closing which violates the Truth in Lending Act (TILA) (Regulation Z), 12 U.S.C. 3806; 15 U.S.C. 1604 and 1637(c)(5).

Under the TILA and Regulation Z, creditors are required to provide consumers with written disclosures of the costs and credit terms associated with mortgage loans on their homes. Among required disclosures are the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule. Creditors must make these disclosures before consummation of the credit transaction. Also, under an amendment to the TILA, creditors making certain high-rate, high-fee loans must provide certain additional disclosures and comply with certain prohibitions required by the Home

Ownership and Equity Protection Act (HOEPA). The TILA laws provide a private right of action by borrowers against creditors for disclosure failures and other violations. Consumers may file lawsuits for actual damages and/or statutory damages, plus any additional costs and reasonable attorney fees.

3. Defendants not only secretly changed the material terms of Plaintiffs' mortgage loan, they changed information about Plaintiff's race on the loan application after Plaintiff had completed and signed the loan application document. Wilmington Finance and Amerimortgage are required to collect and report information regarding race under the fair lending practices of the Home Mortgage Disclosure Act (HDMA). The HMDA data are collected by the Federal Government for certain types of loans related to a dwelling in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. The HMDA data information is used only to enforce fair housing laws, not for evaluation purposes.

4. The Defendant Amerimortgage violated the Truth in Lending Act and Plaintiffs rights when they misrepresented to her that they would be able to provide her with a no-cost re-finance, and a lower interest rate mortgageand failed to do. The misrepresentation of a no-cost refinance to a lower interest rate mortagage was made to Plaintiff both before and after Defendant AmeriMortgage ran Plaintiff's credit report.

David Medine Associate Director for Financial Practices, of the Federal Trade Commission's Bureau of Consumer Protection.defined Predatory Lending Practices as "Predatory lending in the subprime mortgage market covers a wide range of practices. While the practices are quite varied, there are common traits. They generally aim either to extract excessive fees and costs from the borrower or to obtain outright the equity in the borrower's home. This is often accomplished through a combination of aggressive

marketing practices, high-pressure sales tactics, and loan terms, such as prepayment penalties, that inhibit a borrower's ability to go elsewhere for credit. Among the most harmful of these practices is "equity-stripping." This often begins with a loan that is based on equity in a property rather than on a borrower's ability to repay the loan -- a practice known as "asset-based lending." **David Medine, Associate Director for Financial Practices, of the Federal Trade Commission's Bureau of Consumer Protection. Predatory Lending Practices in the Subprime Industry. May 24, 2000.**

5. The last complaint part, your honor as to the Defendants, Amerimortgage and Wilmington Finance is that they also violated (Regulation Z), 12 U.S.C. 3806, regarding Plaintiffs' repayment ability. The Defendants never checked or verified Plaintiff's ability to repay the loan but instead used the equity in her home as collateral for the loan. When Plaintiff disclosed her income which consisted only of $490.00 a month spousal support at the time, and told the Defendant Amerimortgage she was self employed, the Defendant Amerimortage co-erced her into including in her income estimate projections based on what her income may be after she published the book she was writing which is a **prohibited act or practice for loans subject to § USC 226.32. A creditor extending mortgage credit subject to § 226.32 shall not** engage in a pattern or practice of extending credit subject to § 226.32 to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment. There is a presumption that a creditor has violated this paragraph (a)(4) if the creditor engages in a pattern or practice of making loans subject to § 226.32 without verifying and documenting consumers' repayment ability. (Regulation Z), 12 U.S.C. 3806; 15 U.S.C. 1604 and 1637(c)(5).

4

6. The Defendant, US Bank (loan servicer) violated and Fair Debt Collection Act and injured Plaintiff, causing her grief and anguish. US Bank started, then stopped, a Foreclosure Proceeding against Plaintiff in retaliation after Plaintiff filed a complaint of mortgage fraud and predatory lending to the Office of Thrift Supervision (OTS). The Defendant U. S. Bank started then stopped the Foreclosure Proceeding the same, or the next day, but not before posting a Foreclosure Notice in the Legal Newspaper, and on the front door of Plaintiff's home. This was retaliation against Plaintiff for seeking assistance from, and complaining to the New York Attorney General, and the Office of the Thrift Supervision (OTS) about predatory lending policies and procedures. The Defendant, US Bank, was well aware Plaintiff had filed a complaint with the Office of the Thrift Supervision (OTS) when they started the Foreclosure against Plaintiff. Plaintiff had been unable to get any information from U.S Bank on the circumstances around the undisclosed changes to loan terms made prior to Plaintiff's closing. The basis of Plaintiff's complaint of retaliation is that at the time of the Foreclosure notice by US Bank, Plaintiff did not owe the amount US Bank claimed in their Foreclosure Notice. US Bank, violated the Fair Debt Collection Practices Act, which prohibits creditors from publicizing, and misrepresenting the status of debt.

## **REQUEST FOR RELIEF**

PLAINTIFF prays the Court enter an ORDER that:

Awards Plaintiff punitive damages and such damages as would fully compensate her, a victim of the Defendant's predatory lending policies and practices; for the financial burdens and injuries caused by the Defendants. Plaintiff prays for relief as was awarded borrowers who were victims of predatory lending as in the following cases:

5

**A.** In **Toppings v. Meritch Mtg. Servs., Inc**, which involved "predatory lending," the wronged borrowers received awards and punitive damages. The Toppings case involved "predatory lending,." which involves providing a borrower a loan with limited or no benefit, often characterized by high fees, that erodes the borrower's equity through (1) deception or fraud, (2) manipulating the borrower through aggressive sale tactics, or (3) taking unfair advantage of a borrower's lack of understanding of loan terms.

**B.** In Michigan Attorney General Mike Cox vs Ameriquest, more than 18,900 consumers received a restitution check as the result of a nationwide settlement with Ameriquest Mortgage Company.

**C.** Nearly 18,000 borrowers received as much as $60 million dollars in compensation under the terms of a settlement of a lawsuit involving California-based home mortgage lender First Alliance and its chief executive officer for predatory lending. First Alliance marketed its loans through a sophisticated campaign of telemarketing and direct mail solicitations. Consumers who visited First Alliance's loan offices in response to the solicitation were subjected to a lengthy sales presentation known as the "Track." According to these complaints, First Alliance's solicitations and the "Track" presentation misled consumers about the existence and amount of loan origination fees (commonly known as "points") and other fees that First Alliance charged - which typically amounted to 10 percent to 25 percent of the loan. Consumers also were allegedly misled about increases in the interest rate and the amount of monthly payments on adjustable rate mortgage (ARM) loans that the company offered. Additionally, the complaints allege that First Alliance violated the federal Truth-in-Lending Act by failing to provide consumers obtaining ARM loans with a required booklet explaining how these loans worked.

**D.** Under the settlement agreement, in the case United States versus Long Beach Mortgage Company, the company paid $3 million in damages to 1,200 victims of discrimination where the bank allowed its employee loan officers and independent loan brokers to charge, at their discretion, an additional amount over its base price for the loan. The complaint, filed on September 5, 1996, alleged a pattern of African American, Hispanic, female, and older borrowers paying a greater amount for their loans than other borrowers.

**E.** In **United States of America v Mercantile Mortgage Company, Inc.**, Mercantile was ordered to pay the amount of $250,000 (U.S. Dollars) to settle the claims alleged by the FTC, HUD, and the State of Illinois for violating TILA misrepresenting the loan terms and B. Failing to provide the disclosures required by Section 129(a) of the TILA, 15 U.S.C. § 1639(a), and Section 226.32(c) of Regulation Z, 12 C.F.R. § 226.32(c), or failing to provide such disclosures not less than three (3) business days before consummation of the transaction, as required by Section 129(b) of the TILA, 15 U.S.C. § 1639(b), and Section 226.31(c)(1) of Regulation Z, 12 C.F.R. § 226.31(c)(1); C. Failing to provide the disclosures required by Section 128(a) of the TILA, 15 U.S.C. § 1638(a), and Section 226.18 of Regulation Z, 12 C.F.R. § 226.18, or failing to provide such disclosures in a form the consumer can keep, as required by Sections 128(a) and (b) of the TILA, 15 U.S.C. §§ 1638(a) and (b), and Section 226.17(a)(1) of Regulation Z, 12 C.F.R. § 226.17(a)(1);

**F.** In March 2000, the Federal Trade Commission announced a settlement, along with the United States Department of Justice ("DOJ") and the Department of Housing and Urban Development ("HUD"), with Delta Funding Corporation, a national subprime

7

mortgage lender. The Commission alleged that Delta engaged in a pattern or practice of asset-based lending, and other practices, in violation of HOEPA. Specifically, Delta allegedly extended high-cost loans to borrowers based on the borrower's collateral rather than considering the borrower's current and expected income, current obligations, and employment status to determine whether the borrower was able to make the scheduled payments to repay the obligation. In these instances, prudent underwriting criteria, such as debt-to-income ratios, residual income, and repayment history, would have indicated that the borrower likely would have had difficulty repaying the loan. The settlement, which provided for nationwide injunctive relief, also resolved claims by DOJ for violations of the ECOA and by HUD for violations of the Real Estate Settlement Procedures Act. **See United States of America v. Delta Funding Corporation and Delta Financial Corporation**, Civ. Action No. 00 1872 (E.D.N.Y.) (April 2000), (settling FTC allegations that Delta engaged in a pattern or practice of asset-based lending, in violation of HOEPA). See 15 U.S.C. § 1639; 12 C.F.R. § 226.32.

**G.** In July 1999, as part of "Operation Home Inequity," the Federal Trade Commission settled cases against seven subprime mortgage lenders for violations of HOEPA, TILA, and Section 5 of the FTC Act. The alleged HOEPA violations included failure to provide required disclosures, asset-based lending, and use of prohibited terms (such as balloon payments on loans with less than five-year terms, increased interest rates after default, and prohibited prepayment penalties). The settlement agreements provide for substantial remedies and protections for past and future borrowers, including consumer redress totaling $572,500, and, in the case of one lender, a ban against any future involvement with high-cost loans secured by consumers' homes. See Press

Release, *Home Equity Lenders Settle Charges That They Engaged in Abusive Lending Practices; Over Half Million Dollars To Be Returned to Consumers*, Federal Trade Commission, July 29, 1999.

**H.** Also in July 1999, the Federal Trade Commission settled charges that another mortgage lender, Fleet Finance, Inc., failed to provide accurate, timely disclosures of the costs and terms of home equity loans to consumers, and failed to provide or accurately provide consumers with information about their right to cancel their credit transaction, in violation of TILA and Section 5 of the FTC Act. The settlement provides for $1.3 million in consumer redress as well as injunctive relief. See **Fleet Finance, Inc.**, C3899 (F.T.C. Oct. 5, 1999).

**I.** In January 1998, the Federal Trade Commission filed a complaint in the United States District Court for the District of Columbia against Capital City Mortgage Corporation, a Washington, DC-area mortgage lender, and its owner, alleging numerous violations of a number of federal laws resulting in serious injury to borrowers, including the loss of their homes. The company allegedly made home equity loans to minority, elderly, and low-income borrowers at interest rates as high as 20-24 percent. Many borrowers allegedly faced foreclosure on their properties, after which the company would buy the properties at auction for prices much lower than the appraised value of the properties. The Commission's complaint in this matter, which remains in litigation, alleges violations of the FTC Act, the TILA, the ECOA, and the Fair Debt Collection Practices Act. See Complaint at 6, **F.T.C. v. Capital City Mortgage Corp.**, No. 1:98-CV-00237 (D.D.C. filed Jan. 29, 1998); Anastasia Hendrix, *Oakland Widow: They Stole My House*, S.F. Examiner, Apr. 13, 1997, at A-1; Kay Stewart & David Heath, *High-Cost*

*Loans Trap Those Least Able To Afford It*, <u>Louisville Courier-Journal</u>, Feb. 16, 1997, at 16-17; Lucille Renwick, *Wolf at the Door*, <u>L.A. Times</u>, Mar. 14, 1993, at 16. <u>See</u> Also 15 U.S.C. § 1692.

**WHEREFORE** Plaintiff asks for a similar award of restitution and punitive damages and such damages as would fully compensate Plaintiff, a victim of the Defendant's predatory lending policies and practices; for the injuries caused by the Defendants. Plaintiff further prays for such additional relief as the interests of justice may require.

Dated: July 24, 2008

By _____

Grace Adams